UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

```
***********************************
Richard Hammond,                    *
Administrator of the Estate of      *
Bonnie L. Sumner                    *
                                    *
v.                                  *       CIVIL ACTION: 1:06-CV-338-JD
                                    *
The United States of America and    *       JURY TRIAL DEMANDED
Manchester Community Health Center  *
                                    *
***********************************
```

COMPLAINT

INTRODUCTION

1. This action arises under the Federal Tort Claims Act., Sections 2671 through 2680 of Title 28 of the United States Code.

PARTIES

2. Plaintiff Richard Hammond (hereinafter "plaintiff") is the son and duly appointed Administrator of the Estate of Bonnie L. Sumner (hereinafter "decedent"), who died on March 24, 2004.

3. Plaintiff resides at 245 Lowell St., 2d Floor, Manchester, N.H. 03104.

4. The Defendant, United States of America (hereinafter "United States") operates a health care medical facility known as the Greater Manchester Community Health Center (hereinafter "defendant"), 1415 Elm St., Manchester, N.H. 03104.

5. The United States has denied responsibility for the alleged negligence of defendant.

## JURISDICTION AND VENUE

6. This Court is vested with jurisdiction over the United States and defendant pursuant to Section 1346(b) of Title 28 of the United states Code.

7. Venue is proper in the United States District Court for the District of New Hampshire pursuant to Section 1391(e) (2) of Title 28 of the United States Code.

## CLAIMS

8. Decedent was diagnosed with chronic obstructive pulmonary disease in 2000.

9. Decedent had chest x-rays in the year 2000 which were read as negative.

10. Decedent had been a patient of the defendant since April 29, 2002; and routinely visited defendant for the balance of 2002 and for the entire year of 2003.

11. On April 29, 2002, during decedent's first visit with defendant, her then current problems were listed as "hypertension, hyperlipidemia, obesity, COPD and tobacco use."

12. Included in decedent's history on April 29, 2002, were the following facts: "She smoked 1.5 ppd x 29 years and was dx with COPD in the hospital when she was treated for her DVTs. She continues to smoke 1.5 ppd."

13. As part of her treatment plan on April 29, 2002, decedent was scheduled to have a chest X-ray. Her chart reads "will need PFTs and CXR."

14. Despite these comments, no chest x-ray was performed in 2002 or in 2003. No chest x-ray was taken of decedent during the entire time that decedent was a patient with defendant.

15. In March, 2003, decedent complained to defendant of joint pain, shoulder pain and leg swelling. She had bilateral shoulder x-ray and a cervical spine x-ray. She had an

echocardiogram which was reported as normal. She was also given a number of different medications.

16. Between March of 2003 and March of 2004, decedent was evaluated many times for complaints of shoulder pain, back pain and leg swelling. On three occasions she was evaluated for respiratory problems, including May 27, 2003 (cough, wheezing, hard time breathing and trouble sleeping). Her oxygen saturation level was 93% and she was given an inhaler and diagnosed with bronchitis.

17. In August, 2003, decedent was evaluated by defendant for follow up back pain as the result of a fall. She indicated she was waking up in the middle of the night gasping for air.

18. In September, 2003, defendant noted that decedent complained of a cough.

19. On October 2, 2003, decedent was evaluated by defendant for shoulder pain and complained of a two day history of cold and cough symptoms.

20. On October 21, 2003, decedent was evaluated by defendant for shoulder and neck pain. X-rays of her cervical spine as well as shoulder x-rays were done and both were reported as normal. She was diagnosed with myalgia, given medication and referred to a rheumatologist.

21. Decedent was evaluated by defendant on December 30, 2003 for myalgia and severe pain in her shoulder. She had had weight loss of 13 pounds and at that time a new abnormal finding of clubbing of her nails was documented.

22. At the end of 2003, decedent was referred to the Dartmouth-Hitchcock Clinic in Manchester, NH for consultation regarding "diffuse myalgia and arthralgia". According to the record, her symptoms began in the late summer of 2003 with a gradual onset. She had noted that over the past one and one-half months her symptoms became worse. The worst pain was in her neck, shoulders and it was extremely severe in her right shoulder radiating

down to the arms, low back and right leg. Decedent was diagnosed with bilateral shoulder adhesive capsulitis and diffuse myalgia. Physical therapy was recommended.

23. On March 11, 2004, decedent was sent for a chest x-ray because she had significant clubbing of her digits and her history of smoking. A chest x-ray as well as a CT of the chest were performed and both came back positive for lung Cancer.

24. Additional x-rays of decedent's right shoulder demonstrated "almost complete destruction of the right humerus and humeral head" of her shoulder as a result of Cancer

25. Within weeks of the chest x-ray and CT scan, decedent, whose date of birth was June 24, 1958, died as the result of metastatic lung cancer on March 30, 2004.

## COUNT ONE:  NEGLIGENCE

26. It was the duty of Defendant's physicians to possess and exercise the standard and degree of skill, care, knowledge and learning ordinarily possessed or exercised by the average qualified physician, taking into account the existing state of medical knowledge, advances in the medical profession, medical resources available to them, and good medical practice.

27. It was the duty of Defendant's physicians to use reasonable care in their medical diagnosis, methods, examination, testing, procedures, treatment, prescription of medication, prescription of therapy, referral, consultation, and care of decedent.

28. It was the duty of Defendant's physicians to use reasonable care to examine, evaluate, and check decedent's condition at sufficient intervals or frequency to determine the existence, nature and extent of any Cancer.

29. It was the duty of Defendant's physicians to properly diagnose decedent through standard medical practice, procedures and methods.

30. It was the duty of Defendant's physicians to use reasonable care to order, obtain and perform timely diagnostic tests, examinations, procedures, treatments, and monitoring of decedent's medical condition at sufficient intervals or frequency to determine the existence, nature and extent of any Cancer.

31. It was the duty of Defendant's physicians to adequately protect and to treat decedent in a prompt and careful manner.

32. It was the duty of Defendant's physicians to follow up, in an appropriate and timely manner, on decedent's suspicious clinical signs and symptoms.

33. It was the duty of Defendant's physicians to determine, in an appropriate and timely manner, that the chronology of decedent's clinical status necessitated aggressive intervention.

34. It was the duty of Defendant's physicians to use reasonable care to obtain, in an appropriate and timely manner, the advice of oncology consultants and other medical specialists regarding decedent's medical condition.

35. It was the duty of Defendant's physicians to use reasonable care to make a timely determination regarding the appropriateness of a transfer or referral of decedent to such specialists who could provide the services which she required.

36. It was the duty of Defendant's physicians to use reasonable care to inform decedent, in an appropriate and timely manner, of complications that her medical condition presented and the availability of alternative procedures and facilities related to her diagnosis and treatment.

37. It was the duty of Defendant's physicians to use reasonable care with respect to avoiding delay in implementing emergency or more aggressive procedures as they may have become necessary for decedent.

38. It was the duty of Defendant's physicians to prevent the loss of the reasonable opportunity of decedent to arrest her Cancer at an earlier stage.

WHOLLY REGARDLESS OF THE AFOREMENTIONED DUTIES:

39.     Defendant's physicians negligently failed to possess and exercise the standard and degree of skill, care, knowledge and learning ordinarily possessed or exercised by the average qualified physician, taking into account the existing state of medical knowledge, advances in the medical profession, medical resources available to them, and good medical practice.

40.     Defendant's physicians negligently failed to use reasonable care in their medical diagnosis, methods, examination, testing, procedures, treatment, prescription of medication, prescription of therapy, referral, consultation, and care of decedent.

41.     Defendant's physicians negligently failed to use reasonable care to examine, evaluate, and check decedent's condition at sufficient intervals or frequency to determine the existence, nature and extent of any Cancer.

42.     Defendant's physicians negligently failed to properly diagnose decedent, even though her condition was capable of diagnosis through standard medical practice, procedures and methods.

43.     Defendant's physicians negligently failed to use reasonable care to order, obtain and perform timely diagnostic tests, examinations, procedures, treatments, and monitoring of decedent's medical condition at sufficient intervals or frequency to determine the existence, nature and extent of any Cancer.

44.     Defendant's physicians negligently failed to adequately protect and to treat decedent in a prompt and careful manner.

45.     Defendant's physicians negligently failed to follow up, in an appropriate and timely manner, on decedent 's suspicious clinical signs and symptoms.

46.     Defendant's physicians negligently failed to determine, in an appropriate and timely manner, that the chronology of decedent 's clinical status necessitated aggressive intervention.

47. Defendant's physicians negligently failed to use reasonable care to obtain, in an appropriate and timely manner, the advice of oncology consultants and other medical specialists regarding decedent's medical condition.

48. Defendant's physicians negligently failed to use reasonable care to make a timely determination regarding the appropriateness of a transfer or referral of decedent to such specialists who could provide the services which she required.

49. Defendant's physicians negligently failed to use reasonable care to inform decedent, in an appropriate and timely manner, of complications that her medical condition presented and the availability of alternative procedures and facilities related to her diagnosis and treatment.

50. Defendant's physicians negligently failed to use reasonable care with respect to avoiding delay in implementing emergency or more aggressive procedures as they may have become necessary for decedent.

51. Defendant's physicians negligently failed to prevent the loss of the reasonable opportunity of decedent to arrest her Cancer at an earlier stage.

52. Had defendant provided decedent with proper medical diagnosis, methods, examination, testing, procedures, treatment, prescription of medication, prescription of therapy, referral, consultation, and care, plaintiff's Cancer would have been diagnosed and detected at an earlier stage.

53. As a direct and proximate result of the negligence of defendant, decedent's Cancer was not diagnosed until it had progressed to a condition which resulted in her untimely death.

54. The aforementioned negligence of defendant is the direct and proximate cause of damages to decedent, including but not limited to:

    i)     decedent's loss of her opportunity to arrest her Cancer at an earlier stage.

    ii)     decedent's reduction in her life expectancy.

    iii)     a depreciation in the quality of decedent's enjoyment of life.

    iv)    decedent's physical injury, pain, suffering and anguish as a result of defendant's failure to treat decedent's Cancer.

    v)    decedent's great mental and emotional injury, pain, suffering, worry and anguish as a result of defendant's failure to treat plaintiff's Cancer.

    vi)    decedent's loss of income.

    vii)    decedent's wrongful death.

    viii)    decedent's medical expenses that, more probably than not, would not have been necessary, but for defendant's negligence; and which became necessary, because of defendant's negligence.

55. A claim was served upon the United States, based on these allegations, pursuant to 28 U.S.C. Section 2675 on July 19, 2005.

56. Plaintiff has exhausted administrative remedies pursuant to 28 U.S.C. Section 2675.

WHEREFORE, plaintiff requests judgment against the United States and Defendant as follows:

A.    Damages in the amount of $ 10,000,000 plus pre-judgment interest;

B.    Plaintiff's costs in this action; and

C.    Such other and further relief as is fair and just.

        Respectfully Submitted,

        RICHARD HAMMOND, as
        Administrator of the Estate
        of Bonnie L. Sumner,

        By His Attorneys:
        McDOWELL & OSBURN, P.A.

Dated: September 8, 2006    By:    /s/ Joseph F. McDowell, III
        Joseph F. McDowell, III, Esq.
        NH Bar No. # 1675

282 River Road
Manchester, N.H. 03105-3360
(603) 623-9300

9